## ROHWER v. BURRELL et al.

No. 2391.   Decided April 29, 1913 (134 Pac. 573).

1. MORTGAGES—RELEASE—VALIDITY.   Where a mortgagor without any knowledge of the fraud of the mortgagee's attorney in fact obtained from him a release of the mortgage which had six years to run, paying one-half of the mortgage debt, the release is valid and binding, being supported by an adequate consideration.   (Page 518.)

2. CONTRACTS—VALIDITY—CONSIDERATION.   A recited consideration of one dollar is ordinarily sufficient to support a contract or agreement.   (Page 518.)

3. RELEASE—VALIDITY—CONSIDERATION.   Plaintiff held a mortgage on defendant's land and also one of his notes not secured by the mortgage.   Plaintiff's attorney in fact by means of his fraud negotiated a release of the mortgage upon payment of only half of the debt, and, after that transaction was complete, delivered to defendant the unsecured note without consideration.   Subsequently, to induce defendant to testify in an action against the attorney in fact, plaintiff executed a general release for the purpose of validating the release of the mortgage, and without any intention of releasing the unsecured note which amounted to several hundred dollars.   Held that, even though the release recited a consideration of one dollar, it did not release plaintiff's claim against defendant on the unsecured note; there being no adequate consideration.   (Page 518.)

4. APPEAL AND ERROR—HARMLESS ERROR—DEFAULT JUDGMENT.   Where plaintiff had recovered judgment against one of the defendants upon the same cause of action in the courts of a foreign state, and it appeared that the defendant had no property which could be subjected to execution, the improper denial of a default judgment against such defendant is ordinarily no ground for reversal.   (Page 519.)

APPEAL from District Court, First District; *Hon. W. W. Maughan,* Judge.

Action by Mary B. Rohwer against George E. Burrell and Martin V. Rowher.

Judgment for defendants.   Plaintiff appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

*Powers & Marioneaux* and *Ricy H. Jones* for appellant.

*T. D. Johnson* and *Nels Jensen* for respondents.

APPELLANT'S POINTS.

A release or discharge of a mortgage obtained through mistake or fraud, will, as between the parties be held inoperative and no defense to a foreclosure. (2 Jones on Mortgages (6 ed.) pages 966, 967, note 540; 27 Cyc. page 1431; 27 Cyc. page 1432, note 73, collecting cases; *Southern Kansas Arm. Ctd. Co. v. Garrity,* 57 Kan. 805, 48 Pac. 33; Sec. 35 Cent. Dig. tit. Mortgages 951; 20 Am. Eng. Encyc. page 1072; *Klauber v. Vigenon,* 32 Pac. 248; *Bruce v. Bonnie,* 12 Grey (Mass.) 107, 71 Am. Dec. 739; *Branta v. Breeland,* 15 N. J. Eq. 103, 82 Am. Dec. 369; *Talbot v. Gartson,* 31 Oregon, 256; *Lee v. Wagner,* 71 Wis. 191; *Burton et al. v. Reagan et al.,* 75 Ind. 77; *Reag v. Hadly,* 57 Ind. 509; *Lilly v. Buck,* 1 Green Ck. 97; *Grumsas v. Kimball,* 3 Allen, 518; *Eygmor v. Horrow,* 37 Mich. 436; *Ellis v. Sendley,* 37 Iowa, 334; *Heushel v. Monan,* 120 Ill. 660; *Remann Ex. rel. v. Buckmaster,* 85 Ill. 403; *Gould v. Bruster,* 9 Wis. 513; *Champney v. Cooper,* 32 N. Y. 543.)

A release of mortgage will be held invalid and inoperative in equity if procured by means of false representations or other fraud, or by imposition or undue influence or if altered without authority in a material particular. (27 Cyc. page 1420-1421; *Lewis v. Farrell,* 51 Com. 216; *Sidener v. Pavey,* 77 Ind. 241; *Reed v. King,* 23 Iowa, 500; *Groye v. Robards,* 36 Mo. 523; *McMillan v. McMillan,* 184 Ill. 230, 56 N. E. 302; *Sayles v. Brown,* 28 Grant Ch. (U. C.) 10; *Grove v. Herns of Robards, et al.,* 56 Mo. 523; *Sidener v. Parry, et al.* 77 Ind. 24; *Reed v. King,* 28 Iowa, 501; *Suther v. Clay,* 100 Ga. 236, 25 S. E. 146; 27 Cyc. 1432; 29 S. R. A. 95; *Choulder v. White,* 84 Ill. 435; *San Fran. Loan Asso. v. Bowden,* 137 Cal. 237; *Della Co. Land & Caller Co. v. Talcott,* 86 Pac. 982; *In Bank v. Miner,* 9 Col. App. 361; 48 Pac. 837; *Harper v. Saudder,* 61 Pac. 197.)

In any case, however, the mortgage is not discharged unless the intended means of satisfaction actually reaches the creditor and becomes and remains effective in his hands and if a payment is conditional, it does not release the mortgage until the condition is performed. (27 Cyc., 1391, also 1591, 1397, note 67; 27 Cyc., page 1402; *Boyce v. Fisk,* 110 Cal. 107; 42 Pac. 473; *Ladd v. Wiggin,* 25 N. H. 421; 69 Am. Dig. 551; See 35 Cent. Dig. tit. Mortgages, 864.)


FRICK, J.

Appellant brought this action in equity to cancel a certain release of a real estate mortgage and to vacate the record thereof; to cancel a certain power of attorney; to reinstate the mortgage released by said pretended release; and to recover $377 and accrued interest, including an attorney's fee, from the respondents. A trial in the lower court resulted in finding and judgment in favor of the respondent Martin V. Rohwer and a dismissal of the action as against George E. Burrell, from which judgment appellant prosecutes this appeal.

In view of the conclusions reached, we need not set forth in detail the facts, which are somewhat complicated. The undisputed facts, so far as material to this decision, are in substance as follows:

In July, 1902, the appellant and her husband sold to the respondent Martin V. Rohwer a certain farm in Box Elder county, Utah, together with some live stock and other personal property, for the sum of $2320. Of that amount $1600 was evidenced by a promissory note, which was secured by a first mortgage on the real estate sold, and the remainder of the purchase price was evidenced by two $200 notes and one $320 note, all of which were otherwise secured. The note for $1600 did not mature until January 1, 1913, and bore interest as the rate of seven per cent. per annum, payable annually. Certain payments were made from time to time on the smaller promissory notes aforesaid between the time they were given and October 5, 1905, at which time a

balance remained due on the purchase price of the property aforesaid amounting to $1977, $1600 of which was evidenced by the large note aforesaid. On October 5, 1905, for reasons not material here, a new note and mortgage were given for the $1600 note, and the original mortgage was released and satisfied of record; but the note itself was retained by appellant to evidence the $377 still due and owing by Mr. Rohwer on the purchase price of the property aforesaid. Mr. Rohwer was thus owing appellant $1600 on the note and mortgage and $377 as a balance due as aforesaid. The new $1600 note also matured on January 1, 1913. After the delivery of the new note and mortgage, in the early part of the year 1906, appellant and her husband, because of domestic difficulties, separated, and, at the solicitations her brother, the respondent George E. Burrell, she went to live with him at his home in Plano, Idaho. While she was living with him, to wit, in July, 1906, he, by false and fraudulent representations, induced her to execute and deliver to him the power of attorney referred to, and also to execute and deliver to him the release of the mortgage given to secure the note aforesaid. At that time the note was deposited with a bank at Brigham City, Utah, and the power of attorney was obtained by the brother so that he might take up the note and cancel it or dispose of it and collect the amount thereof. The release of the mortgage was obtained by him for the purpose of canceling the mortgage in case he could discount the note or collect the same from the payor, Mr. Rohwer. In July, 1906, and before the power of attorney and the release aforesaid were obtained, the brother of the respondent Burrell sought to open up negotiations with Martin V. Rohwer for the purpose of discounting the new $1600 note, and with that end in view he wrote Mr. Rohwer as follows:

"Mr. Martin V. Rohwer — Dear Sir: Would you like to take up that note and mortgage that my sister holds against you? If so, write me at once. We will give you a discount large enough to make it worth your while. [Signed] Orson Burrell."

42 Utah 33

A few days thereafter, pursuant to that letter, Orson Burrell called on Mr. Rohwer at Brigham City, Utah, and the matter of discounting the note was discussed between them. Mr. Rohwer then agreed to raise the money to take up the note if a liberal discount were allowed. Within a short time thereafter the respondent George E. Burrell called on Mr. Rohwer at Brigham City and informed him that his brother Orson had advised him that he (Mr. Rohwer) was willing to take up the note if a sufficient discount were made. Mr. Rohwer replied that he would pay fifty per cent. of the face value of the note. Mr. Burrell said he would accept that amount and exhibited the power of attorney and the release of the mortgage both executed by his sister, the payee of the note, as his authority. Before offering the note to Mr. Rohwer for the sum aforesaid, Mr. Burrell had offered to discount the same to the bank at Brigham City, but the bank refused to purchase the same or to make any offer therefor. Mr. Rohwer was slightly acquainted with Orson Burrell, but he was not acquainted with the respondent George E. Burrell at the time of the foregoing transaction. Mr. Rohwer was aware, however, that there existed some differences between the appellant and her husband, who was a brother of Mr. Rohwer, and that they had separated. Mr. Rohwer borrowed the money to pay off the note from his neighbor and secured the payment thereof by giving him a real estate mortgage. After obtaining the money as aforesaid, Mr. Rohwer paid the sum, namely, $800, to respondent George E. Burrell and secured from him the release of the mortgage and placed the same on record in Box Elder County. After paying the $800, Mr. Rohwer said that he also desired to obtain the note on which there remained a balance due of $377. The respondent Burrell knew nothing about this note, since his sister had said nothing to him about it; but he, nevertheless, was willing to deliver the same to Mr. Rohwer if it could be obtained. Mr. Rohwer informed Mr. Burrell that the note was in the possession of one Bowring at Brigham City. Mr. Burrell and Mr. Rohwer then went to Mr. Bowring to obtain the note. Mr.

Bowring at first refused to surrender it, because, as he claimed, he had no authority to do so from appellant, the owner thereof. Mr. Burrell, however, informed him that he had a power of attorney and convinced Mr. Bowring that he had authority under the power of attorney to demand the note, and, after being so convinced, Mr. Bowring delivered the same to Mr. Burrell and he surrendered it without receiving payment or any consideration, to Mr. Rohwer.

Mr. Burrell immediately returned to his home at Plano, Idaho, and there informed his sister, the appellant, that he had discounted the $1600 note for $800. She says in her testimony that her brother did so inform her, and that if she had obtained the money from him she would have been satisfied, although the amount received was only one-half of the face of the note. After her brother had informed her as aforesaid, she demanded the money from him, but he said that in view that she did not need it then he would like to keep and use it and would pay it to her whenever she needed or wanted it. After this she made repeated demands on her brother for the money but received none from him. Time thus ran along until a year had elapsed, when appellant left her brother's home in Idaho and came to Brigham City, Utah, where she became reconciled with her husband, from whom she then learned for the first time that the statements and representations that her brother had made to her and on reliance of which she had executed the power of attorney and release of the mortgage for the purpose of obtaining the money from Mr. Rohwer were false. The appellant then sued her brother in Idaho to recover from him the money he had fraudulently obtained as aforesaid. While that action was pending, appellant went to see Mr. Rohwer to induce him to go to Idaho to testify in her behalf in said action with respect to the facts and circumstances under which he paid the money to her brother and the amount that was paid by him. Mr. Rohwer said he would do so, but before he went he said that, in view that there might be some question with respect to the sufficiency of the power of attorney or the release of mortgage, he would like to obtain a general release from

appellant. This, it seems, was done by the advice of Mr. Rohwer's counsel, who drew up the general release, and appellant signed and delivered the same to Mr. Rohwer. He accordingly went to Idaho and there testified that Orson Burrell first introduced the matter of discounting the note to him and that it was afterwards discounted as before stated, Appellant obtained judgment in the Idaho action against her brother, which at the time of the trial of this case, remained wholly unsatisfied. Indeed, from the evidence relating to her brother's ability to pay, we infer that the judgment is worthless. After the determination of the action in Idaho, however, appellant or her attorney conceived the notion that Mr. Rohwer had in some way instigated the Burrells to obtain the power of attorney and release of the mortgage, or was in some way connected with said transaction, and she thus commenced this action against both Mr. Rohwer and the respondent George E. Burrell for the purpose stated at the opening of this opinion.

We have carefully read (and to some extent re-read) the whole of the evidence as the same is preserved in the bill of exceptions, and from a consideration thereof we are forced to the following conclusion, namely: That appellant was induced to execute and deliver the power of attorney and release of the mortgage by reason of the false and fraudulent representations of her brother George E. Burrell that her husband would attempt to get the money for the note and mortgage and then would deprive her thereof; that she accordingly became very anxious to secure the money from Mr. Rohwer, and in order to have him pay it then, about 6½ years before the note matured, she was willing to make a large discount; that Mr. Rohwer was also willing to get the note and release of the mortgage if he could get them at a large discount; that, while Mr. Rohwer was aware that appellant and her husband were separated, yet he knew nothing of and had neither part nor share in the acts, statements, or representations made by the Burrells or either of them to their sister in obtaining the power of attorney and release of mortgage from her, and he paid

the money to Mr. Burrell believing appellant wanted it and that she was willing to make a large discount in order to get it so long before it was due. We can find no evidence whatever in the record justifying a finding that Mr. Rohwer acted in bad faith, or that he intended to defraud appellant, or that he had any knowledge that she was being defrauded in the transaction. Mr. Rohwer, however, did have some reason to know or believe that Burrell had no authority to collect the sum of $377 which remained unpaid of the original purchase price of the farm and that that item was not included in the power of attorney, and hence Mr. Burrell had no authority to surrender that note. Mr. Rohwer also knew, and frankly admitted the fact when asked concerning it at the trial, that he paid absolutely nothing for the surrender of the note, which he also admitted was worth at the time the sum of $377. He also knew that that note could not have been included in the discount because the discount agreed upon was fifty per cent. of the face value of the $1600 note, that is, $800, which was the only amount paid by him. Further, he knew that the $377 claim was not thought of until the transaction with respect to the $1600 note had been fully completed.

The only claim, therefore, that Mr. Rohwer can make, and which he does make, is that he was discharged from the $377 obligation by the general release which appellant executed and delivered to him as before stated. That release was, however, made and delivered at a time when there were no matters of difference pending between the appellant and Mr. Rohwer and was then a mere voluntary transaction evidencing nothing in particular. According to Mr. Rohwer's own statements to appellant, he was not seeking a release from her to cover the $377 claim, but what he had in mind was that there might be some defect or weakness in the release of the mortgage or the power of attorney appellant had given to the respondent George E. Burrell. There was no defect in the release of mortgage, but one may well doubt whether the power of attorney as it was drawn constituted any authority whatever to discount the $1600

note or any other note. But that matter is of no importance now, since it required no special power of attorney to authorize Burrell to discount the note; but, even though it had, the discounting of the note was afterwards ratified by appellant after she had received full knowledge of the precise amount for which the note was discounted.

In any view that may be taken, therefore, there was really no consideration whatever for the surrender of the note which was held by Mr. Bowring for the $377 claim. The contention that the one dollar for which the general release was given constituted a good and sufficient consideration therefor, as an abstract proposition, may be conceded. No one doubts, nor can doubt, that one dollar is ordinarily a good and sufficient consideration to support a contract or agreement. Under the circumstances that we are here dealing with, however, the claim, when put forth in that form, is not pertinent. When the claim of respondent Rohwer is stripped of its pseudo legal habiliments, it amounts to this: We may give the transaction by which Mr. Rohwer obtained possession of the note which was held for the $377 claim any name we please, yet, if he be permitted to reply upon the general release, he must be permitted to pay off a *bona fide* debt, which he himself concedes amounted to $377, by the payment of one dollar. When stated in that form, of course no court would hold that the payment of debts in that wholesale manner would be sustained either in law or equity. While it is no doubt true that Mr. Rohwer also gained a great advantage by discounting the $1600 note, yet in view that said note was paid more than six years before maturity, and in view that so far as the evidence discloses Mr. Rohwer was not guilty of any wrongdoing with regard to that transaction, but paid the money believing that appellant wanted the use thereof then, we are not authorized to set aside that transaction. Moreover, for that wrong the courts of Idaho have already given appellant such redress as the law affords. We are of the opinion, however, that under the prayer for general relief appellant is entitled to a judgment against

Mr. Rohwer for said sum of $377, with legal interest thereon from the date on which the note was surrendered to him by Mr. Bowring until paid, and for fifty dollars as attorney's fee.

The district court for some reason refused appellant judgment against the respondent Burrell, although he made default and in that way had confessed the allegations of the complaint. She insists that she is entitled to judgment as against Burrell by default. While under the peculiar circumstances of this case we should not reverse the case for that reason alone, since appellant already has a judgment against Mr. Burrell in Idaho, yet in view that we shall have to remand the cause with directions for other reasons, we think that the complaint states a good cause of action, and hence appellant is entitled to a judgment by default as against respondent Burrell as a matter of right.

The judgment is therefore reversed, and the findings of fact and conclusions of law, so far as they are in conflict with the views expressed herein, are vacated and set aside, and the district court of Box Elder County is hereby directed to make findings against the respondent Rohwer and in favor of appellant for said sum of $377 and legal interest as stated in the foregoing opinion, and also for the sum of fifty dollars as an attorney's fee, and to enter judgment against said Rohwer for said several sums of money, and to affirm the judgment in his favor with regard to the acts of fraud alleged against him; further, to enter judgment by default against the respondent George E. Burrell in accordance with the prayer of the complaint without making special findings as against him. Appellant to recover costs of this appeal and costs in the lower court.

McCARTY, C. J., and STRAUP, J., concur.